IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-00095-F

| | |
|---|---|
| ALBERT PRIDGEN, | ) |
| Plaintiff/Claimant, | ) ) ) ) |
| v. | ) **MEMORANDUM AND** ) **RECOMMENDATION** ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-12, DE-14] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Albert Pridgen ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded for further consideration.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on July 16, 2013, alleging disability beginning May 31, 2012.[1] (R. 18, 198-204). The claim was denied initially and upon

---

[1] Claimant filed a prior application for benefits on November 14, 2011, which was denied June 18, 2013. (R. 96-107).

reconsideration (R. 18, 112-42). A hearing before an Administrative Law Judge ("ALJ") was held on September 23, 2014, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 36-92). On December 12, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 15-35). The Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process, as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. (R. 30). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 20). Next, the ALJ determined Claimant had the severe impairments of lumbar degenerative disc disease, post-traumatic stress disorder ("PTSD"), an affective disorder, and an anxiety disorder. *Id.* The ALJ also found Claimant had the non-severe impairments of mild obesity and headaches. (R. 20-21). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-23). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living, moderate difficulties in social functioning and concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (R. 21-22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium exertional work with the following limitations: frequent exposure to moving mechanical parts and high, exposed places; frequent contact with supervisors and coworkers; occasional contact with the general public; understand, remember, and perform work tasks at GED Reasoning Level 03; perform work that involves routine tasks (i.e., no more than frequent changes in core work duties); perform work that does not require exposure to the news by any means (e.g., print, TV, radio).[2] (R. 23-28). In making this assessment, the ALJ found Claimant's statements about his limitations partially credible. (R. 24-25). At step four, the ALJ concluded Claimant is

---

[2] The ALJ's decision states that Claimant "can perform work that **does require** exposure to the news." (R. 23) (emphasis added). This appears to be a typographical error. In the RFC analysis, the ALJ explains that "[m]edia access is based on claimant testimony identifying it as a significant source of stress." (R. 28) (internal footnote omitted). Defendant likewise reads the ALJ's RFC as imposing a restriction of no exposure to the news. Def.'s Mem. [DE-15] at 22.

4

unable to perform any of his past relevant work. (R. 28). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29-30).

Claimant alleges the following errors by the ALJ: (1) failure to give substantial weight to Claimant's Department of Veterans Affairs ("VA") disability rating in violation of *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012); (2) failure to provide adequate reasons for assigning little weight to the opinion of Claimant's treating psychiatrist; and (3) failure to account for Claimant's moderate limitations in concentration, persistence, or pace in the RFC. Pl.'s Mem. [DE-14] at 8-15.

## V. DISCUSSION

### A. The ALJ's Consideration of the VA Disability Rating.

Claimant contends the ALJ erred in failing to give substantial weight to his VA disability rating in violation of the *Bird* decision. Pl.'s Mem. [DE-13] at 8-11. Specifically, Claimant asserts the ALJ's determination in this regard is vague and the cited reasons for the weight afforded lack merit. *Id.* Defendant contends the *Bird* decision is contrary to existing regulations but that, notwithstanding, the ALJ's analysis complies with *Bird*. Def.'s Mem. [DE-15] at 23-25. The undersigned agrees with Claimant that the ALJ's analysis of the VA disability rating is inadequate.

The VA issued a decision on April 28, 2012, assigning Claimant the following disability ratings: PTSD 70% disabling, effective September 22, 2011; headaches 50% disabling, effective July 2, 2010; lumbosacral strain with IVDS 10% disabling, effective March 10, 2011; radiculopathy, right lower extremity 20% disabling, effective March 10, 2011; radiculopathy, left lower extremity 20%

5

disabling, effective March 10, 2011; and a 90% overall combined disability rating, effective March 10, 2011. (R. 231-32). Additionally, the VA determined Claimant was entitled to be paid at a 100% rate because he is "unable to work due to [his] service connected disability/disabilities." (R. 231). The ALJ evaluated the VA decision as follows:

> In a decision dated April 28, 2012, the Department of Veterans Affairs (VA) found that the claimant was unable to work due to his service-connected disabilities, effective September 22, 2011 (Ex. B10D). The undersigned is neither bound nor controlled by that agency's decision, which is based on its regulations (20 CFR 404.1504). Further, the VA assigns a numerical rating to each discreet impairment as a percentage of diminished earning capacity. This differs significantly from the undersigned's obligation to address with functional specificity how the claimant's physical and/or mental capacities are collectively affected. While the VA has opined the claimant is unemployable, no rationale or analysis is presented in support of this conclusion. Finally, while the VA's assessment is not a medical opinion, the undersigned is required to consider the medical evidence the VA used in making its assessment. In the end, the undersigned gives the VA rating some credibility as a general indicator of the severity of any particular impairment.

(R. 27).

Although not binding on the Commissioner, disability decisions by other governmental agencies "cannot be ignored and must be considered" in making a disability determination. S.S.R. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). In *Bird*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d at 343 (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

6

Here the ALJ gave "some credibility as a general indicator of the severity of any particular impairment" to the VA determination. (R. 27). It is not readily apparent what this statement actually means, and the ALJ fails to make clear what portions he found credible or not credible and why, frustrating meaningful review. Further, simply noting the fact that the VA and SSA employ different standards, in and of itself, is insufficient to justify deviation under *Bird*. *See Nguyen v. Colvin*, No. 5:14-CV-227-D, 2015 WL 5062241, at *7 (E.D.N.C. Aug. 10, 2015) (unpublished) ("[T]he reasons cited by the Commissioner—different rules and different standards—would apply to every case and thus cannot be relied upon to avoid scrutiny of the [agency's] decision under *Bird's* new presumptive standard."), *adopted by* 2015 WL 5089060 (E.D.N.C. Aug. 27, 2015). While the ALJ also contends there is no rationale or analysis supporting the VA determination, there is a section of the decision entitled "REASONS FOR DECISION," which provides some insight into the disability ratings. (R. 233-37). For example, the decision states that the 70% disability rating with respect to Claimant's PTSD is based on occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood; difficulty in adapting to stressful circumstances; disturbances of motivation and mood; panic attacks more than once a week; anxiety; chronic sleep impairment; and depressed mood. (R. 234). The decision also notes that Claimant had a Global Assessment of Function or GAF score of 40 and that a range of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.* There may well be legitimate reasons to justify the ALJ's deviation from the VA decision, e.g., the timing of the decision, any change in condition, the evidence the VA relied on, etc., but the ALJ failed to state any and it is not the role of the court to ferret them out in the first instance. *See Fox v. Colvin*, No. 14-2237, 2015 WL

9204287, at *5 (4th Cir. Dec. 17, 2015) (unpublished) (per curiam) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Finally, the court declines Defendant's invitation to disregard the Fourth Circuit's decision in *Bird*, which is binding precedent in this court. Accordingly, it is recommended that the matter be remanded for the ALJ to explain, based on the record and in conformity with *Bird*, why deviation from the VA disability determination is appropriate.

## B. The ALJ's Consideration of Dr. Hay's Medical Opinion

Claimant contends the ALJ provided inadequate reasons for assigning little weight to the medical opinion of Dr. Hay, Claimant's treating psychiatrist. Pl.'s Mem. [DE-13] at 11-14. Specifically, Claimant argues that the record fails to support the ALJ's findings that Dr. Hay's opinion provided no meaningful rationale, Dr. Hay only saw Claimant four times, and that Dr. Hay's treatment notes contain minimal findings. *Id.* Defendant contends the ALJ correctly evaluated Dr. Hay's opinion and the ALJ's determination is supported by the record. Def.'s Mem. [DE-15] at 17-20. The undersigned agrees with Claimant that the ALJ's stated reasons are not fully supported by the record.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). And more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability than non-treating sources, such as consultative

8

examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ is not required, however, to discuss all of these factors. *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason.

9

*Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

Dr. Hay, Claimant's treating psychiatrist since June 19, 2008, provided a Treating Psychiatrist Statement Concerning Social Security Disability Benefits dated September 17, 2014. (R. 594-98). The statement lists Claimant's diagnoses as PTSD, major depression (recurrent and severe with psychotic features), and cognitive disorder not otherwise specified. (R. 594). Dr. Hay treated Claimant with medication and therapy and noted the response to treatment was "partial." *Id.* Dr. Hay assessed, by marking a form, Claimant's limitations as follows: mild limitation in activities of daily living, marked limitation in social functioning, extreme limitation in maintaining concentration, persistence, or pace, and one or two episodes of decompensation each lasting at least two weeks. (R. 594-96). Dr. Hay also indicated, again by marking her choice, that Claimant suffered "substantial loss" in the ability to do the following on a sustained basis (i.e., eight hours a day, five days a week) in a competitive, non-sheltered, remunerative, unskilled work environment: understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (R. 597). Dr. Hay found Claimant would be able to attend less than 80% of all workdays for eight hours a day, five days a week. *Id.* At the end of the form, Dr. Hay provided the following explanation in support of her opinion: Claimant is able to bathe, cook, and keep a checkbook, but sometimes his mood interferes with his desire to bathe; Claimant's social function is poor, he does not tolerate crowds, is not dating, and

10

activities consist of attending church; Claimant is unable to concentrate long enough to subtract serial 3s beyond 100 - 3 = 97 and could not do any serial 7s; and Claimant has had two episodes of decompensation in the last year, one requiring an antipsychotic for auditory hallucinations. (R. 598).

The ALJ summarized and evaluated Dr. Hay's opinion as follows:

> Susan A. Hay, M.D., a treating psychiatrist, opined on September 17, 2014, that the claimant had mild limitation in activities of daily living; marked limitation in social functioning; and extreme limitation in maintaining concentration, persistence, or pace. She also assessed that the claimant had one or two episodes of decompensation, each lasting at least two weeks; and he would attend work less than 80 percent of all workdays during a 40-hour workweek. Dr. Hay further assessed that the claimant had substantial loss of ability to understand, remember, and carry out simple instructions on a sustained basis; to make judgments commensurate with unskilled work on a sustained basis; respond appropriate to others and usual work situations on a sustained basis; and deal with changes in a routine work setting on a sustained basis (Ex. B9).
>
> This opinion is given little weight. Although she is a treating psychiatrist, Dr. Hay is not given controlling weight for several reasons. First, a claimant's residual functional capacity is not a medical issue but is an administrative finding that is reserved to the Commissioner of Social Security. Dr. Hay renders her opinions in a summary "check the block" fashion with little to no meaningful rationale. This is the functional equivalent of a doctor responding to closed ended questions. Dr. Hay's treatment notes are unremarkable and do not support the opined exceptional functional limitations. In the relevant period, she saw the claimant four times, each for a thirty-minute session. The only time the claimant showed any agitation was immediately following his earlier denial of benefits. Otherwise, Dr. Hay's notes are largely unremarkable with minimal, if any, changes in medication (Exhibits B4F/20; B7F/5, 11, 20).

(R. 26).

In summarizing Dr. Hay's opinion, the ALJ discounts her opinion for having "little to no meaningful rationale" but fails to mention the narrative portion of her opinion where she provides some support for her suggested limitations. (R. 26). Further, while the ALJ is correct that a check-the-box form, without more, may be discounted, *see McGlothlen v. Astrue*, No. 7:11-CV-148-RJ,

11

2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012) (unpublished) (finding no error in ALJ's assignment of little weight to a form opinion lacking explanation and where accompanying treatment notes did not support the functional limitations stated in the form opinion), here there was more and it is unclear whether the ALJ considered it.

The ALJ also discounted Dr. Hay's opinion because she only saw Claimant four times, for a 30-minute session "[i]n the relevant period." (R. 26). The ALJ appears to limit his consideration of the length of treatment relationship to the relevant period for disability, which is relatively short in this case where Claimant's prior application for benefits was denied June 18, 2013 and not appealed. (R. 24, 26). There is no support for this narrow view of length of treatment relationship in the regulations. When a treating source's opinion is not given controlling weight, the weight given is determined through consideration of several factors including the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2). Specifically, the regulation provides,

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

*Id.* § 404.1527(c)(2)(i). Dr. Hay began treating Claimant in June 2008. (R. 594). As Claimant notes, in the roughly two-year period leading up to the ALJ's decision, the record indicates Dr. Hay saw Claimant routinely, at least 11 times for 30 minutes or more at each visit, in addition to Claimant's treatment in group therapy and with a therapist. (R. Ex. B1F, B2F, B4F, B7F); Pl.'s Mem. [DE-13] at 13 (citing R. 346-48, 376-79, 387-89, 395-97, 406-11, 411-14, 494-96, 497-501, 565-68, 572-74, 595). The record indicates Dr. Hay's length of treatment relationship with Claimant

12

would support her opinion, not detract from it.

Further, despite the ALJ's additional finding that Dr. Hay's notes are largely unremarkable with minimal if any medication changes, the record cited by the ALJ in support of this finding contains contrary indications. For example, the ALJ cited Dr. Hay's August 5, 2013 treatment note at Exhibit B4F/20, but Dr. Hay indicated at that time Claimant "is not doing much of anything," "[f]eels irritable and fears he could lose control, [and] therefore, avoids people," "is having more headaches," and "admits he shoved a friend who came to his house." (R. 353). Dr. Hay also added Risperidone for auditory hallucinations to Claimants's other medications at that time. (R. 537). Similarly, the ALJ cited Dr. Hay's June 26, 2014 treatment note at Exhibit B7F/5, which indicates Claimant "has had increased sleep disturbance," his mood was "dysphoric with constricted affect," and some anxiety, and Dr. Hay increased Trazodone for sleep and mood. (R. 565, 567).

Finally, it is remarkable that the ALJ, when giving significant weight to the opinions of the non-examining state agency reviewers, stated that "[g]enerally, such opinions are entitled to considerable deference when they are supported by the record (20 CFR 404.1527(f)(2) and SSR 96-6p)." (R. 27). The regulation and ruling cited by the ALJ provide no authority for this "considerable deference" approach, but rather require the ALJ to consider and evaluate such opinions as he would do with any other opinion from a nonexamining source. *See* 20 C.F.R. § 404.1527(e)(ii) (formerly designated as (f)); S.S.R. 96-6p, 1996 WL 374180 (July 2, 1996); *see also Radford*, 734 F.3d at 296 ("state medical opinions are issued by non-examining physicians and are typically afforded less weight than those by examining and treating physicians") (citing C.F.R. § 404.1527(c)). This further calls into question whether the ALJ applied the appropriate standards when evaluating the medical opinion evidence. These errors undermine the ALJ's evaluation of Dr. Hay's opinion. Accordingly,

13

it is recommended that on remand the ALJ reconsider and explain the weight afforded the opinion evidence in accordance with 20 C.F.R. § 404.1527.

## C. The ALJ's Findings Related to Claimant's Limitation in Concentration, Persistence, or Pace

Claimant contends that the RFC failed to account for the ALJ's finding that Claimant suffered from moderate limitations in concentration, persistence, or pace, citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Pl.'s Mem. [DE-13] at 14-15. Defendant contends that the ALJ's RFC appropriately addresses any limitation in concentration, persistence, or pace and does not violate *Mascio*. Def.'s Mem. [DE-15] at 21-23. The court agrees with Defendant that the ALJ's RFC does not violate *Mascio* with respect to Claimant's limitations in concentration, persistence, or pace.

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, or pace does not affect the Claimant's ability to work and would be appropriately excluded from the RFC. In such circumstances, however, an explanation from the ALJ is required. *Id.*

Here, in assessing Claimant's difficulties in "concentration, persistence, or pace," the ALJ specifically noted Claimant's complaints of decreased memory that impacted his ability to sustain

14

focused attention and concentration. (R. 22). There is no indication in the ALJ's findings that Claimant's decreased memory translated into a limitation on pace. *See Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016) (lack of evidence that claimant had significant limitations in her ability to perform at a consistent pace made inclusion in RFC of a limitation on pace unnecessary). In the RFC discussion, the ALJ explained that he imposed limitations on task complexity to account for Claimant's moderate limitations in concentration, persistence, or pace. (R. 27). Specifically, the ALJ found that Claimant can "understand, remember, and perform work tasks at GED Reasoning Level 03" with no more than frequent changes in core work duties, frequent contact with co-workers and supervisors, and occasional public contact. (R. 23). There is no error in the ALJ's determination that limiting the complexity, frequency of changes, and contact with others required in Claimant's work would sufficiently address Claimant's reduced ability to sustain focus and concentration due to memory problems. *See Reiser*, 2016 WL 1183092, at *8 (finding the ALJ's inclusion of a limitation to only occasional contact with coworkers and the general public in the RFC addressed claimant's moderate difficulties in concentration and persistence); *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished) (finding limitation "to performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounted for difficulties with concentration and persistence but not pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished) (distinguishing *Mascio* where the ALJ limited claimant to "simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact," accounting for limitation in concentration and persistence by restricting her to a stable work environment with

15

only occasional public contact). This is not a case like *Mascio*, where the ALJ simply limited a claimant to simple, routine, repetitive tasks to account for a limitation in concentration, persistence, or pace without further explanation. Accordingly, the ALJ properly accounted for Claimant's identified moderate difficulties in maintaining concentration in the RFC.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-12] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-14] be DENIED, and the matter be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 13, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and**

Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 29 day of June 2016.

Robert B. Jones, Jr.
United States Magistrate Judge